1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                   FOR THE EASTERN DISTRICT OF CALIFORNIA
10   ANDERSON P. THURSTON,
11            Petitioner,                    No. CIV S-08-2280-LKK-GGH P
12        vs.
13   JAMES YATES,
14            Respondents.              FINDINGS AND RECOMMENDATIONS
15   _____/
16   *Introduction and Summary*

17            The facts regarding tolling here are complicated enough such that after a text

18   analysis of the facts, the court will make a summary chart.  However, the legal analysis of

19   statutory tolling is rather simply based on the fact that the first state habeas petition was filed in

20   the state supreme court on the *last day of the AEDPA limitations period.*  Thus, absent equitable

21   tolling, in order to be timely, the federal petition had to be filed on the very day the state supreme

22   court petition was denied.   Then, analyzed from an equitable tolling basis, although much of the

23   elapsed time prior to the filing of the federal petition can be equitably tolled because of the

24   conduct of state habeas counsel, petitioner's desire to unnecessarily file further state petitions pro

25   se after he became aware of his counsel's actions dooms his present federal petition.  The motion

26   to dismiss on the basis of the AEDPA statute of limitations should be granted.

                                            1

1   *Background*

2          Petitioner, a state prisoner proceeding pro se, seeks relief in an application

3   pursuant to 28 U.S.C. § 2254.   On December 27, 2002, petitioner was sentenced, under the three

4   strikes law, to a total term of 27 years to life for one count of felony evasion of police while in

5   pursuit (25-to-life) plus two consecutive one-year terms for prior convictions.  Petition, p. 1,

6   Amended Petition (AP), p. 1; Exh. A, p. 7, to Motion to Dismiss (MTD).  Petitioner sets forth the

7   following grounds within his original petition: 1) denial of due process/violation of double

8   jeopardy clause when trial court reneged on plea agreement without sufficient cause forcing

9   petitioner to withdraw his guilty plea; 2) prosecutor wrongly permitted to charge enhancements

10  with life-in-prison exposure after having previously agreed to four-to-eight year maximum

11  sentence; 3) decision to charge petitioner with multiple strikes was in retaliation for his having

12  exercised his constitutional rights; 4) prosecutor violated petitioner's Fourteenth Amendment

13  rights by reneging on a plea deal then using confidential statements made during plea

14  negotiations against petitioner at trial; 5) ineffective assistance of trial and appellate counsel.[1]

15  \\\\\

16

---

17          [1] Petitioner filed an amended petition substituting or adding, in part, other claims, but there
18  is no "relation back" issue because the initial petition is untimely.  That is, an amended petition
    cannot relate back to initially filed claims which are all untimely themselves.  However, for the sake
    of completeness, the undersigned will finish describing the claims made in this federal case.
19          It is unclear within his original petition what his fifth ground for relief is; petitioner may be
    seeking to allege that his habeas counsel provided ineffective assistance.  Within his putative
20  amended petition, petitioner sets forth the claims of his original petition as his seventh through
    eleventh grounds for relief, omitting only claim 4 above and adding a purported claim 11) ineffective
21  assistance of habeas counsel.  Amended Petition (AP), pp. 66-82.  As his first through sixth grounds
    within the amended petition, petitioner alleges the following grounds: 1) due process violation when
22  state breached plea contract after petitioner performed his part of the contract; 2) trial court's jury
    instruction on Cal. Veh. Code § 2800.2 with CALJIC 12.85 violated due process, substituting a
23  mandatory presumption for proof of the critical element of the crime; 3) trial court erred by failing
    to instruct jury that traffic violations had to involve unsafe operation of a motor vehicle; 4) Cal. Veh.
24  Code § 2800.2 fails to give notice, in violation of due process, of the precise conduct prohibited by
    the "willful and wanton disregard" element; 5) trial court erred by refusing petitioner access to juror
25  information to determine whether any juror had read a highly prejudicial news article on second day
    of trial; 6) trial court violated due process when failing to unseal juror information after defense
26  counsel showed good cause.  AP, pp. 27-65.

1    Pending before the court is respondent's March 30, 2009 (docket # 20), motion to

2 dismiss the petition as barred by the AEDPA statute of limitations, to which petitioner filed an

3 opposition, after which respondent filed a reply.  Petitioner's response to the reply, typically not a

4 filing contemplated by the applicable rules, will be considered as it contains a subsequent

5 declaration by the same individual whose declaration is included with respondent's reply.

6    <u>Motion to Dismiss</u>

7    Pending before the court is respondent's motion to dismiss the petition, alleging

8 that the petition was not filed timely.  The statute of limitations for federal habeas corpus

9 petitions is set forth in 28 U.S.C. § 2244(d)(1):

10    A 1-year period of limitation shall apply to an application for a writ
      of habeas corpus by a person in custody pursuant to the judgment
11    of a State court.  The limitation period shall run from the latest of–

12    (A) the date on which the judgment became final by the conclusion
      of direct review or the expiration of the time for seeking such
13    review;

14    (B) the date on which the impediment to filing an application
      created by State action in violation of the Constitution or laws of
15    the United States is removed, if the applicant was prevented from
      filing by such State action;
16
      (C) the date on which the constitutional right asserted was initially
17    recognized by the Supreme Court, if the right has been newly
      recognized by the Supreme Court and made retroactively
18    applicable to cases on collateral review; or

19    (D) the date on which the factual predicate of the claim or claims
      presented could have been discovered through the exercise of due
20    diligence.

21    On January 19, 2005, the California First District Court of Appeals in a combined

22 unpublished decision both affirmed petitioner's 2002 conviction and denied his habeas petition.

23 MTD, Exh. A.  The appeal had been filed by counsel and the habeas petition was filed pro se.

24 Opposition (Opp.), p. 22.  A subsequent order modifying the opinion and denying rehearing (but

25 not changing the judgment) issued on February 17, 2005.  Id. at 48-49.  Petitioner's appellate

26 counsel filed a petition for review in the state supreme court on February 28, 2005, which was

3

1   denied on May 11, 2005.  MTD, Exh. B; Opp., pp. 2-3.  Petitioner's conviction became final 90

2   days later, as respondent contends (MTD, p. 3) and petitioner concedes (Opp., p. 8), on August 9,

3   2005, when the time to file a petition for writ of certiorari in the United States Supreme Court

4   expired.  Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999).  As petitioner admits, the AEDPA statute

5   of limitations began to run the next day, on August 10, 2005.  Opp., p. 8.  Petitioner thus had one

6   year, or until August 9, 2006, to file a timely federal petition, absent applicable tolling.  Patterson

7   v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Petitioner does not dispute that when his

8   counsel filed the August 9, 2006, habeas petition, there were no days left for the filing of his

9   federal petition.  Opp., p. 9.

10         Section 2244(d)(2) provides that the time during which a properly filed

11   application for state post-conviction or other collateral review with respect to the pertinent

12   judgment or claim is pending shall not be counted toward any period of limitation.  However, §

13   2244(d)(2) can only pause a clock not yet fully run; it cannot "revive" the limitation period once

14   it has run (i.e., restart the clock to zero).  Thus, a state court habeas petition filed beyond the

15   expiration of AEDPA's statute of limitations does not toll the limitation period under §

16   2244(d)(2).  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jiminez v. Rice, 276

17   F.3d 478, 482 (9th Cir.2001).

18         As respondent points out, petitioner filed a petition for writ of habeas corpus in

19   the California Supreme Court on August 9, 2006, the last day of the AEDPA statutory limitations

20   period.  MTD, p. 3, Exh. C.  Petitioner makes clear that it was his habeas counsel who filed the

21   petition.  Opp., pp. 9, Exh. 3, pp. 19-20.  The statute was tolled until the petition's denial, on

22   March 14, 2007, which denial evidently included a citation to In re: Clark, 5 Cal.4th 750 (1993),

23   according to the docket sheet submitted and according to petitioner himself.  MTD, Exh. C;

24   Opp., p. 20.  Respondent contends that at that point petitioner's time for filing a federal petition

25   ran out, but does not make any Pace argument based on the In re: Clark citation (see below).

26   \\\\\

1      Petitioner maintains that respondent failed to inform the court that petitioner pro

2  se filed a petition for review and/or rehearing in the state supreme court on September 18, 2007,

3  within 20 days of learning, in August of 2007, from a state supreme court clerk, that his habeas

4  petition had been denied on March 14, 2007; the clerk informed petitioner by a letter he received

5  on September 20, 2007, that there would be no action taken on his rehearing petition.  Opp., p. 4,

6  Exhs. 3-4 (see Equitable Tolling discussion below).  Petitioner then states that he filed a habeas

7  petition in the superior court within ten days, that was "constructively filed October 10, 2007,"

8  alleging that his habeas counsel, a Mr. Bergerson, was ineffective for, inter alia, failing to file a

9  timely petition in the state supreme court, but petitioner did not maintain a copy of the petition

10 and had no money to obtain a copy from the superior court.  Opp., pp. 5-6, Exhs. 5-7.  Petitioner

11 faults respondent for failing to lodge that document as well as the December, 2007, denial of that

12 petition.  Opp., p. 5.

13      Respondent's Exh. D is a docket sheet showing that petitioner filed another

14 habeas petition in the California First Appellate District on January 9, 2008, which petition was

15 denied on January 31, 2008.  Petitioner avers that that petition again claimed that Bergerson was

16 ineffective for the delayed filing of his habeas petition in the state supreme court, which petition

17 filed by Bergerson claimed "the judge broke the plea contract with petitioner."  Opp., p. 6.  A

18 final petition in the state supreme court was filed by petitioner pro se on February 21, 2008,

19 which petition was denied on August 13, 2008 (no citation this time noted in the docket).  MTD,

20 Exh. E.  Petitioner maintains that this petition set forth the same ineffectiveness claim regarding

21 his habeas counsel.  Opp., p. 6.  Petitioner's original petition was filed in this court on September

22 29, 2008, but by application of the mailbox rule deemed filed as of September 23, 2008.[2]

23

24      [2] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988)(pro se
prisoner filing is dated from the date prisoner delivers it to prison authorities). Stillman v. Lamarque,
25 319 F.3d 1199, 1201 (9th Cir. 2003)(mailbox rule applies to pro se prisoner who delivers habeas
petition to prison officials for the court within limitations period).  Petitioner makes application of
26 the mailbox rule particularly difficult.  The petition itself is signed and dated September 21, 2008.
Petitioner's declaration attached thereto is signed and dated  September 22, 2008.  Finally, there is

1           Thus, in summary:

2   August 9, 2005–          state conviction final; AEDPA limitations period commences

3   August 9, *2006*–        First state habeas petition filed in Cal. Supreme Court on *last day*
                             of AEDPA limitations period, i.e. no statutory tolling time remains
4
5   March 14, 2007–          Denial of first state habeas petition; AEDPA limitations period
                             expired

6   August 2007–             Petitioner learns from state supreme court clerk that a state petition
                             was filed and denied March 14, 2007
7
8   September 18, 2007–      Petitioner files a rehearing request regarding first state habeas petition

9   September 20, 2007–      Petitioner informed that no action would be taken on request for
                             rehearing

10  October 10, 2007–        2nd state habeas petition filed in Superior Court (but no record
                             herein)
11
12  December 2007–           Superior Court petition denied

13  January 9, 2008–         3rd state habeas petition filed in Court of Appeal

14  January 31, 2008–        3rd state habeas petition denied

15  February 21, 2008–       4th state habeas petition filed in Supreme Court

16  August 13, 2008–         4th state habeas petition denied

17  September 23, 2008–      Federal petition filed under mailbox rule

18          Of course, even petitioner's first state habeas petition would not count for

19  statutory tolling because it was not "properly filed," as it was denied on the basis of untimeliness.

20  Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807 (2005).  However, respondent does not raise

21  this issue, and the undersigned will not raise it for him.  The first state habeas petition, albeit

22  filed on the last day of the AEDPA limitations period, will count for statutory tolling.

23  Nevertheless, when this petition was denied on March 14, 2007, petitioner had the near

24  _____

25  a note addressed to the court clerk by petitioner that is signed by him and dated September 23, 2008,
    wherein he states that he is mailing his exhibits to his petition  "simultaneously from the prison to
    your office but separately...."  See Petition, p. 12.  As petitioner  provides no certificate of service,
26  the court will construe his filing as having been made on September 23, 2008.

6

impossible task of filing his federal petition that very day.  Even if petitioner's very belated and ineffectual request for rehearing were to be considered part of the first habeas petition resulting in further statutory tolling time from the initial denial, the fact remains that petitioner was informed that no action would be taken on this request, and statutory tolling had ended as of this time.  The federal petition was untimely at the latest by September 20, 2007 unless equitable tolling can save the petition.[3]

*Equitable Tolling*

In Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds, Calderon v. U.S. District Court for Cent. Dist. of CA. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), itself abrogated by Woodford v. Garceau, 538 U.S. 202, 123 S. Ct. 1398 (2003), the Ninth Circuit found that the statute of limitations could be equitably tolled if extraordinary circumstances beyond a prisoner's control made it impossible to file the petition on time.   "In addition, '[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate.'" Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

Equitable tolling will not be available in most cases because tolling should only be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him to file a petition on time.  Beeler, 128 F.3d at 1288-89.  As held in Beeler,  "[w]e have no doubt that district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289. "Mere excusable neglect" is insufficient as an extraordinary circumstance.  Miller v. New Jersey Dept. of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998).  Moreover, ignorance of the law does

---

[3]No gap tolling would be possible from the denial of the first state supreme court petition to the filing of the second Superior Court petition in that the grounds of the Superior Court petition were entirely different from those grounds presented in the state supreme court in the first petition. See Hemmerle v. Schriro, 495 F.3d 1069, 1075 (9th Cir. 2007).

1   not constitute such extraordinary circumstances.  See Hughes v. Idaho State Bd. of Corrections,

2   800 F.2d 905, 909 (9th Cir. 1986).

3          In the Calderon (Beeler) case, the Court of Appeals held that the district court

4   properly found equitable tolling to allow Beeler more time to file his petition.  Beeler's lead

5   counsel withdrew after accepting employment in another state, and much of the work he left

6   behind was not usable by replacement counsel – a turn of events over which the court found

7   Beeler had no control.  The Court of Appeals held that the district court properly found these

8   were "extraordinary circumstances" sufficient to toll the statute of limitations.[4]  The Ninth

9   Circuit also found extraordinary circumstances in Calderon v. U.S. Dist. Ct. (Kelly), supra, 163

10  F.3d 530.  The three reasons given which independently justified tolling were: a district court

11  stay which prevented petitioner's counsel from filing a habeas petition, mental incompetency

12  until a reasonable time after the court makes a competency determination, and the fact that

13  petitioner did at one time have timely habeas proceedings pending which were mistakenly

14  dismissed, not as a result of any doing by petitioner.  Id. at 541-42.  See also Corjasso v. Ayers,

15  278 F.3d 874 (9th Cir. 2002) (clerk's unjustified rejection of a petition justified partial tolling);

16  Miles v. Prunty, 187 F.3d at 1107 (delay by prison in withdrawing funds from prisoner's trust

17  account, preparing and mailing filing fee were circumstances beyond his control, qualifying him

18  for equitable tolling); Stillman v. Lamarque, 319 F.3d 1199, 1202-03 (9th Cir. 2003) (equitable

19  tolling permitted where litigation coordinator broke a promise to petitioner's counsel to return a

20  signed petition for timely filing); Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (sufficiently

21  egregious misconduct by counsel, such as wholly deficient performance, may justify equitable

22  tolling).

23  \\\\

24

---

25      [4]  See also Baskin v. United States, 998 F. Supp. 188 (D. Conn. 1998), wherein the court
    applied equitable tolling where petitioner's attorney failed to notify him of the denial of a petition
26  for certiorari until thirteen months after the denial was entered.

1          Conversely, in U.S. v. Van Poyck, 980 F. Supp. 1108, 1110-11 ( C.D. Cal. 1997),

2   the court found that a petitioner's circumstances were not extraordinary in the following

3   circumstances: inability to obtain transcripts from court reporters, and general prison lockdowns

4   preventing the prisoner's access to the library and a typewriter which were necessary to his

5   motion.  See also Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance on

6   incompetence of jailhouse lawyer not sufficient to justify cause to excuse procedural default);

7   Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did not toll

8   statute); Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1273 (D. Haw. 1999) (lack of legal

9   expertise does not qualify prisoner for equitable tolling); Henderson v. Johnson, 1 F.Supp.2d

10  650, 656 (N.D. Tex. 1998) (same); Fadayiro v. United States, 30 F.Supp.2d 772, 779-80 (D.N.J.

11  1998) (delay in receipt of transcripts does not justify equitable tolling).

12          A habeas petitioner bears the burden of proving that equitable tolling should apply

13  to avoid dismissal of an untimely petition.  Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir.

14  2002).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two

15  elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

16  circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814;

17  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir.  2009); see also, see also, Chaffer v. Prosper, __

18  F.3d __, 2010 WL 157488 *2 (9th Cir. Jan. 19, 2010).  "The petitioner must additionally show

19  that 'the extraordinary circumstances were the cause of his untimeliness'...and that the

20  'extraordinary circumstances ma[de] it impossible to file a petition on time.'"  Ramirez, supra,

21  (internal citations omitted).  "Equitable tolling is unavailable in most cases," and is only

22  appropriate "if extraordinary circumstances beyond a prisoner's control make it impossible to

23  file a petition on time."  Miranda, supra, at 1066 (internal quotations/citations omitted [emphasis

24  added in Miranda]).  A petitioner must reach a "very high" threshold "to trigger equitable tolling

25  [under AEDPA]...lest the exceptions swallow the rule."  Id.

26  \\\\\

1    Petitioner claims entitlement to equitable tolling due to his being "constantly

2  diligent" in efforts to file a timely petition in this court which extraordinary circumstances

3  prevented.  Opposition (Opp.), p. 1.  In the same month petitioner's petition for review was

4  denied by the state supreme court, May of 2005, petitioner maintains he mailed his transcripts to

5  an attorney, Donald Bergerson, who had agreed to prepare petitioner's habeas claims and file

6  them in the California Supreme Court.  Opp., p. 2.[5]  According to petitioner, the attorney had told

7  him he needed the transcripts to prepare the petition, but petitioner received no acknowledgment

8  that the transcripts had been received.  Id.  The next month, in June of 2005, petitioner states that

9  he began to write and phone Bergerson to determine whether his state habeas petition had yet

10  been filed, but received no response to his letters and was unable to penetrate a block on

11  Bergerson's telephone preventing inmates from calling him.  Id.   Petitioner indicates that he

12  wrote a friend, Darlynn Bondurant, asking her to phone Bergerson to find out whether Bergerson

13  had filed a petition; while petitioner does not provide the date for his correspondence to her,

14  petitioner includes what appears to be a copy of her response to him (although she identifies

15  herself as "Kanizah" at the end of the letter), dated August 22, 2007, and he confirms that he

16  received her reply in August of 2007.  Opp., p. 3, Exhs. 1-2.  Within the letter, his friend informs

17  petitioner that Bergerson said that his writ had been denied.  Opp., Exh. 1.  Petitioner states that

18  he then wrote Bergerson again for a copy of his petition and the return of his transcripts but no

19  response was forthcoming.  Opp., p. 4.  Petitioner relates that "intermittently, from June, 2005, to

20  August 2007," he wrote the state supreme court asking whether Bergerson had filed a habeas

21  petition on his behalf.  Id.  Petitioner maintains that he finally received a letter from the state

22  supreme court clerk, as noted earlier, informing him that Bergerson had filed a habeas petition

23  for petitioner and that it was denied on March 14, 2007.  Id.  At Exh. 3 to his Opp., petitioner

24

25    [5] To the extent that petitioner intended his opposition to be a declaration in opposition, it is
    defective for petitioner's failure to sign and date it.  See Opp., p. 7.  He also failed to sign his
26  opposition argument.  Opp., p. 11.

1   includes a copy of his petition for re-hearing to the state supreme court, which as noted, he

2   indicates that he filed within 20 days of learning that his habeas petition had been denied on

3   March 14, 2007.  That petition is stamped (not very legibly) as having been received on

4   September 18, 2007.  Opp., p. 4, Exh. 3.  Once he received the September 20, 2007, response

5   indicating that there would be no action on his petition for re-hearing (received on September 18,

6   2007) of the petition denied on March 14, 2007, petitioner then subsequently, within ten days,

7   filed his habeas petition in Solano County Superior Court (the one he indicates was

8   "constructively filed on October 10, 2007"), to which he states that he attached the court clerk's

9   August, 2007, letter informing him of the denial of his habeas petition in March of 2007.  Opp,

10  pp. 4-5, Exh. 4.  Petitioner includes a copy of a letter from the Solano County Superior Court

11  acknowledging the filing of his habeas petition in that court signed by him on October 10, 2007,

12  and filed there on October 16, 2007.  Opp., Exh. 5.  Petitioner asserts that he attached a copy of

13  the December, 2007, denial of this petition to the January 9, 2008, petition that he filed in the

14  state court of appeals.[6]  Opp., pp. 5-6.  Petitioner then goes on to confirm the January 31, 2008,

15  denial by the California Court of Appeal, the February 21, 2008, filing of his petition with the

16  claim of ineffective assistance of habeas counsel in the California Supreme Court and the August

17  13, 2008, denial of same.  Opp., pp. 6-7.  Petitioner notes that he filed the instant petition (at least

18  the original petition) in this court less than a month and a half later (Opp., p. 7), which the court

19  has construed as having been filed on September 23, 2008.

20          There are somewhat dueling declarations submitted by petitioner's state court

21  habeas counsel.  In his declaration attached to the reply, Mr. Bergerson, while stating that he "at

22  no relevant time 'refused'" to communicate with petitioner, emphasizes that "our communication

23  was seriously disrupted during a crucial interval," arising from the unexplained fact that the

24

25          [6] Petitioner evidently filed his state court of appeal petition without benefit of his superior
    court petition as he states that he failed to retain a copy of the lower court petition and twice
26  unsuccessfully sought to have a copy sent to him.  Opp., p. 6, Exhs. 6-7.

1  carrier which handled telephone calls placed from petitioner's prison "placed a 'block' on my

2  line." Reply, Bergerson Declaration (Dec.) I, ¶ 5.  Bergerson states parenthetically that he is

3  informed that such blocks "are... a frequent problem for defense lawyers." Id.  The declarant

4  goes on to state:

5  
6  
7  
8  
> Mr. Thurston and I were able to circumvent the block to a limited
> extent by the use of "three way" calls, but this was never an
> adequate substitute for readily available direct telephone service.
> Letters are too slow, rigid and cumbersome for the give-and-take
> required in complicated cases such as Mr. Thurston's habeas, and
> as such, the interruption of telephone service was, as a practical
> matter, tantamount to a complete blockage of communication.

9  Reply, Bergerson Dec. I, ¶ 5.

10         Thus, Mr. Bergerson at least implicitly acknowledges that he did not write

11 petitioner to keep him informed about the status of his petition and, although petitioner does not

12 mention any three-way calling communication, his habeas counsel also finds deficient the lack of

13 direct phone contact.  Further, Bergerson also acknowledges that while he filed the petition for

14 petitioner on August 9, 2006, and that it was denied on March 14, 2007, he did not communicate

15 this by phone, correspondence or in person (apparently, either the filing or the denial), stating

16 that while he (rather vaguely) recalled "informing one or more of Mr. Thurston's friends or

17 family about," presumably, the denial, "I did not write to inform Mr. Thurston." Reply,

18 Bergerson Dec. I, ¶ 6.[7]  He further declares that petitioner's "assertion that he was unaware of the

19 denial is, therefore, credible." Id.  Petitioner declares, in his verified amended petition, that the

20 first "personal communication" he had with Bergerson after he took petitioner's case in May of

21 2005, was not until November, 2008, when they finally had telephone contact.  AP, p. 7.

22 

23        [7] Petitioner states, in his verified amended petition, that when he received a copy of the state
24 court petition from the state supreme court clerk when he was informed of the March 14, 2007,
   denial, in August of 2007, that  the proof of service attached thereto states that he was mailed a copy
   of the August 9, 2006, petition.  AP, pp. 6-7.  However, he insists that he never received a copy at
25 that time and believes that a review of his mail log would confirm this.  Id., at 7.  Moreover, in
   neither of his declarations, does Mr. Bergerson affirm that he provided a copy of the subject petition
26 to him at any time.

1   Petitioner further declares that he did not receive his case file back from Bergerson until June,

2   2008.  AP, p. 8.  Mr. Bergerson, in a footnote to his supplemental declaration, confirms the

3   obvious point that petitioner did not have the case file while he, Bergerson, had it, but he

4   confusingly states that at the time he offered to return it to petitioner, at a point "significantly

5   later than the timeframe at issue in the instant litigation," petitioner stated that he had it.  Sur-

6   reply, Bergerson Dec. II, n. 1.  The court will accept petitioner's declaration that he did not have

7   his case file, from whatever source, until June of 2008.

8          Where Bergerson had initially declared that he received the relevant records for

9   the petition from petitioner's appellate counsel, Marylou Hillberg (Reply, Bergerson Dec. I, ¶ 4),

10  in his second, or supplemental, declaration attached to petitioner's response to the reply (Sur-

11  reply), he states that after having received a phone call from petitioner who referenced an

12  exchange of letters which indicated that Ms. Hillberg had actually mailed the case file to

13  petitioner, Bergerson has no reason to doubt that it was actually petitioner who sent it to him.

14  Sur-reply, Bergerson Dec. II, ¶ 2.  Mr. Bergerson also reiterates that he failed to communicate

15  the fact of the denial of the petition he had filed for petitioner from the date of denial until the

16  point at which petitioner learned of it.  Sur-reply, Bergerson Dec. II, ¶ 3.  It, in fact, appears that

17  Bergerson at no relevant point communicated this to petitioner directly.

18          There is no constitutional right to habeas counsel.  Coleman v. Thompson, 501

19  U.S. 722, 755-757, 111 S. Ct. 2546, 2568 (1991), citing, inter alia, the holding of Pennsylvania v.

20  Finley, 481 U.S. 551, 557, 107 S. Ct. 1990, 1994 (1987) (no constitutional right to appointed

21  counsel in state post-conviction proceedings).  Moreover, respondent is correct that mere attorney

22  negligence does not justify equitable tolling (Reply, p. 2), as noted above.  Miranda v. Castro,

23  supra, at 1068, quoting Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) ("attorney's

24  'miscalculation of the limitations period... and ...negligence in general do not constitute

25  extraordinary circumstances sufficient to warrant equitable tolling'").  It is also the case that his

26  counsel states expressly that he agreed to file petitioner's initial state supreme court petition and

petitioner does not indicate that Mr. Bergerson was to file his federal petition as well.  Reply, Bergerson Dec. I, ¶ 3.  However, at least for the period up to and including the time at which petitioner was informed in August of 2007, that a petition had been filed by Bergerson and it had been denied on March 14, 2007, the lack of communication from his counsel might arguably rise to the level of egregious conduct afforded equitable tolling under Spitsyn, supra, at 801, although that case is distinguishable in that counsel in Spitsyn was hired to file a federal, not state, habeas petition and, also unlike counsel herein, he failed to file any petition at all.  The cases are similar in that petitioner herein also appears to have made reasonably diligent efforts to contact his counsel, who essentially remained incommunicado.  The court, however, need not determine petitioner's entitlement to equitable tolling, at least up until the date upon which he was finally informed by the state supreme court clerk of the denial of the state supreme court habeas filed on his behalf, on the basis that his counsel's lack of communication rose to the Spitsyn level because the Ninth Circuit has determined that "a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter." Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir.  2009).  The court does not agree with respondent that the indirect communication from petitioner's friend with regard to what Bergerson may have told her would be the point at which petitioner was made sufficiently aware but should rather date from the state supreme court clerk's response.  However, it appears that the dates of these two events occurred fairly closely in time, as both happened in August, 2007, and petitioner does not provide a copy of the letter with the date upon which he was informed by the state supreme court clerk.  Petitioner has maintained that he attached a copy of it to his petition to Solano County Superior Court, but respondent, which is tasked with lodging the relevant records has failed to lodge that document.  Therefore, the court will grant petitioner the greatest latitude and deem that he was informed by the clerk on August 31, 2007.   With his sur-reply, petitioner attaches a copy of a letter from his appellate counsel, dated May 24, 2005.  Sur-reply, Exh. 2.  Within that letter, petitioner is informed, inter alia, of

1    the need to exhaust any additional claims, other than those raised on direct appeal, through the

2    state supreme court before proceeding on a federal habeas petition, but Ms. Hillberg also

3    thoroughly informed him therein of the one-year AEDPA statute of limitations.  Id.  In speaking

4    of a hypothetical state habeas petition, she states that while the one-year deadline will be tolled

5    until there is a state supreme court decision on any habeas claim that he should not delay in filing

6    a state habeas petition even though there is no actual deadline for doing so "because, if you let

7    too much time go by, the court may refuse to hear the petition due to inexcusable delay."  Id.

8           Granting petitioner equitable tolling through August 31, 2007, still leaves a gap of

9    389 days, or more than a year before the instant petition was filed.  Even if, under Spitsyn, the

10   court further finds petitioner should be granted equitable tolling until June 30, 2008, the last day

11   of the month during which petitioner states that he received his case file back from Bergerson,

12   that still leaves a gap of 85 days.  Had petitioner made diligent efforts at that point at which he

13   learned that his state supreme court habeas petition had been denied to file his federal petition,

14   for example, within a month or so of having affirmatively and expressly learned of the denial, or

15   even if he had done so within a month of having his case file returned, the court could at least

16   arguably extend equitable tolling for petitioner to either of those points, given that his counsel

17   had delayed until the last day of the expiration of AEDPA filing deadline to file the state court

18   petition.  But petitioner commenced not only a petition for re-hearing, but thereafter began again

19   in the lower state court on a new round of habeas petitions.  That he may have been doing so

20   because he believed he could not proceed on the claims in this court due to procedural

21   deficiencies he believed kept the state supreme court from reaching the merits of his claims in

22   that court and that he may have diligent in pursuing that path, especially in light of the fact that

23   he could believe himself to have been ill-served by his state court habeas counsel (he focuses in

24   his petition for review/re-hearing in the state supreme court on the In re Clark, supra, citation in

25   the petition denial for his conclusion that the merits were not reached due to procedural

26

deficiencies which he ascribes to his counsel's failings[8]) simply does not warrant equitable

tolling of the AEDPA one-year statute of limitations beyond a certain point in this court.

Ignorance of the law, as stated above, does not warrant equitable tolling.  Hughes v. Idaho State

Bd. of Corrections, supra, at 909.  And, in this instance, petitioner appears to have been fairly

well-informed as to the deadline and could not reasonably presume that he had carte blanche in

this court to commence a new round of state court habeas petitions long after the statutory

AEDPA deadline had passed.[9]

   Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to

dismiss as barred by the AEDPA statute of limitations, filed on March 30, 2009 (docket # 20), be

granted.

   These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within fourteen days after service of the objections.  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 01/28/2010     /s/ Gregory G. Hollows

         UNITED STATES MAGISTRATE JUDGE

GGH:009
thur2280.mtd

---

[8] He also therein explains that he could not have filed his re-hearing petition sooner due to his counsel's failure to keep him apprised of the date of filing or denial of his petition.  Opp., Exh. 3.

[9] Although it is not dispositive of the timeliness issue, it does not help petitioner's case that the round of state court habeas petitions that he filed pro se, in raising a claim for ineffective assistance of habeas counsel, simply did not raise a constitutional issue.